# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

**FILED**

MAY 02 2008

MOLLY C. DWYER, CLERK OF COURT
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: IN RE: SKECHERS U.S.A., INC. SECURITIES LITIGATION,<br><br>In Re<br><br>------------------------------<br><br>MUNICIPAL EMPLOYEES' RETIREMENT SYSTEM OF MICHIGAN, on behalf of itself and all others similarly situated,<br><br>Plaintiff - Appellant<br><br>v.<br><br>SKECHERS USA, INC.; ROBERT GREENBERG; MICHAEL GREENBERG; JEFFREY GREENBERG; DAVID WEINBERG,<br><br>Defendants - Appellees | No.  05-55980<br>D.C. No.  CV-03-02094-PA<br><br><br>**MANDATE** |



RECEIVED
CLERK, U.S. DISTRICT COURT

MAY – 2 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

The judgment of this Court, entered 04/10/2008, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

FOR THE COURT:

Molly C. Dwyer
Clerk of Court


By: Theresa Benitez
Deputy Clerk

FILED

NOT FOR PUBLICATION

APR 10 2008

UNITED STATES COURT OF APPEALS

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: IN RE: SKECHERS U.S.A., INC. SECURITIES LITIGATION, | No. 05-55980 |
| | D.C. No. CV-03-02094-PA |
| MUNICIPAL EMPLOYEES' RETIREMENT SYSTEM OF MICHIGAN, on behalf of itself and all others similarly situated, | MEMORANDUM* |
| Plaintiff - Appellant, | |
| v. | |
| SKECHERS USA, INC.; ROBERT GREENBERG; MICHAEL GREENBERG; JEFFREY GREENBERG; DAVID WEINBERG, | |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted November 6, 2007
Pasadena, California

---

*    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Before: FARRIS and PAEZ, Circuit Judges, and BLOCK,** District Judge.

Municipal Employees Retirement System of Michigan and other plaintiffs appeal the district court's dismissal of their First Amended Complaint against Skechers USA, Inc. and four of its principal officers alleging securities fraud in violation of sections 10(b) and 20(a) of the 1934 Securities Exchange Act, 15 U.S.C. §§ 78j, 78t, and 17 C.F.R. § 240.10b-5. They allege that defendants Michael Greenberg, Robert Greenberg, and David Weinberg committed fraud when they made optimistic earnings projections in press releases and conference calls on April 24 and July 24, 2002, knowing that the company had been experiencing a decrease in demand.

Considering the plaintiffs' allegations in their totality, *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. __, 127 S. Ct. 2499 (2007), we conclude that the plaintiffs have failed to "state with particularity facts giving rise to a strong inference that the defendant acted with" knowledge that their statements were false, as required by the PSLRA. 15 U.S.C. § 78u-4(b)(2).

In arguing that the named defendants knew that their April 24 and July 24, 2002 statements were false, the plaintiffs rely in large part on a confidential

---

** The Honorable Frederic Block, Senior United States District Judge for the Eastern District of New York, sitting by designation.

2

witness's account of a February 2002 company sales meeting. Allegations that the officers knew that sales were down in February do not strongly support an inference that the officers' statements were fraudulent when made two months later in April. *See Tellabs*, 127 S. Ct. at 2511 ("[O]missions and ambiguities count against inferring scienter."). To the contrary, the record contains statements that suggest that the company's sales were experiencing an upswing in March. *See id.* at 2509 (finding that the court must consider "plausible opposing inferences" that are unfavorable to the plaintiff). For example, in the April conference call, M. Greenberg noted that orders had trended up in March and that retailers had been "placing orders closer to the season."

The only link that plaintiffs provide between the February meeting and the April statements is an allegation by two confidential witnesses that in these intervening weeks "each of the defendants was receiving weekly updated projections of booked and expected sales and knew that Skechers faced a sharp decline in [second half] sales." The complaint, however, fails to describe with any detail the contents of these interim reports, who drafted them, or how the confidential witnesses were in a position to know that the defendants received the alleged reports. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999); *see also In re Daou Systems, Inc. Sec. Litig.*, 411 F.3d 1006, 1022 (9th

3

Cir. 2005) (general allegations that defendants' receipt of unspecified weekly or monthly reports are insufficient).

The plaintiffs also alleged that Skechers persuaded customers to take early delivery of merchandise, resulting in a shift of approximately $20 million in sales from the third quarter to the second quarter of 2002. Plaintiffs argue that the shift was intended to artificially inflate second-quarter sales to meet expectations, and to give a falsely optimistic impression of demand for Skechers' product.

We agree with the First Circuit's observation that "[t]here is nothing inherently improper in pressing for sales to be made earlier than in the normal course." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 202 (1st Cir. 1999). Here, the shifted sales were not necessary to meet second-quarter expectations because Skechers would have exceeded those expectations with or without them: Sketchers exceeded consensus estimates by $0.11 per share; in announcing those results, defendant M. Greenberg estimated that "$0.06 per share was due to [Skechers'] ability to surpass our internal goals and that $0.05 per share was related to [the] retail request for the early delivery of [Skechers'] products." Nothing in the complaint calls that estimate into question.

In any event, M. Greenberg explained that the increase attributable to the shifted sales would come out of third-quarter expectations. Thus, the market was

4

aware that the increase in second-quarter sales came at the expense of third-quarter sales.

Finally, the plaintiffs also fail to demonstrate that the defendants' sales of stock between May 3 and June 24, 2002 were "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989). The defendants had sold large amounts of stock during the same two months of the previous year. Further, the quantity of stock sold does not support the inference of scienter. The Greenbergs sold between 7% and 17% of their total holdings, while Weinberg sold 42% of his much smaller stake in the company. This court has not generally inferred scienter from sales in this range. *See Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) (finding sales of 10% to 17% were not suspicious); *In re Silicon Graphics*, 183 F.3d at 987 (finding sales of 43.6% of an individual's shares were not suspicious where the sales represented an "insignificant portion of the allegedly suspicious sales").

Considering the totality of the facts alleged in the FAC, the plaintiffs have failed to meet their burden under the PSLRA.

**AFFIRMED**

5